**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:17-CV-00231-TBR**

STRATEGIC MARKETING SERVICES, LLC,                          Plaintiff,

v.

DANIEL SKELTON,                                            Defendant.

**MEMORANDUM OPINION AND ORDER**

Strategic Marketing Services, LLC filed this action against Daniel Skelton, a former employee, bringing a host of claims arising from an employment agreement between them. Previously, it sought a temporary restraining order to enforce noncompetition, nonsolicitation, nondisclosure, and nonrecruitment clauses in that agreement. After hearing argument from both sides, the Court issued that order. Now, Strategic Marketing Services, LLC asks for a preliminary injunction to the same effect. Having considered the record before it, the balance of equities weighs in favor of preliminary injunctive relief. Accordingly, Strategic Marketing Services, LLC's Motion for a Preliminary Injunction, [R. 11], is **GRANTED**.

**I.**

**A.**

The Court makes the following findings of fact. Strategic Marketing Services, LLC is a participant in a niche industry dedicated to providing direct-mail marketing services to automobile dealerships nationwide. In a nutshell, Strategic Marketing Services, LLC analyzes certain information to locate potential automobile purchasers and then attempts to connect those persons to dealerships through targeted mailings. It uses a purpose-built customer management system, known as COSMIC, to assist in nearly every

1

aspect of carrying on its business. Much of the information accessible through COSMIC (e.g., client lists, pricing information, and results from prior advertising campaigns) is proprietary. To protect that confidential information, all prospective employees of Strategic Marketing Services, LLC must agree to take on certain contractual obligations.

Daniel Skelton was no exception. Strategic Marketing Services, LLC hired him as a divisional Vice President of Sales in February 2015. Prior to accepting that position, Skelton signed an employment agreement. [R. 1-1 (Employment Agreement).] The agreement prohibited him from disclosing confidential information, [*id.* at 6, ¶ 12(B)], and, for a period of two years after separation, from soliciting Strategic Marketing Services, LLC's customers, [*id.* at 6–7, ¶ 14], recruiting its personnel, [*id.* at 7, ¶ 15], and competing with it, [*id.* at 7–8, ¶ 17(A)].

Skelton remained in Strategic Marketing Services, LLC's employ for a year or so. During his time with Strategic Marketing Services, LLC, Skelton oversaw salespersons in a number of states, including California, Arkansas, and Florida. He also had access to Strategic Marketing Services, LLC's proprietary information through COSMIC. Ultimately, things between Strategic Marketing Services, LLC and Skelton did not work out, and Strategic Marketing Services, LLC terminated his employment in November 2016.

A few months later, Strategic Marketing Services, LLC began to suspect that Skelton might be violating certain clauses in his employment agreement. The first hint came in the form of an e-mail intended for Skelton from D2MFP, Inc., a client of Strategic Marketing Services, LLC. [R. 1-3 at 2 (E-mail of February 21, 2017).] The content of the e-mail itself is cryptic. However, John Lesch, the Vice President of Sales

for Strategic Marketing Services, LLC, explained that, in his experience, the context of the message indicated that Skelton was trying to conduct a direct-mail campaign for D2MFP, Inc.

The second clue came from Nicole Miranda, a saleswoman whom Skelton supervised while employed with Strategic Marketing Services, LLC. She told Todd Strause, the President of Strategic Marketing Services, LLC, that Skelton had tried to solicit her to come work with him. However, she declined his offer.

The third and final breadcrumb came from Grady Nutt, who is a salesman with Strategic Marketing Services, LLC. Nutt recounted a conversation between himself and Drew Dees of Crain Automotive, also a client of Strategic Marketing Services, LLC. Nutt claims that, after a meeting at Crain Automotive's headquarters, Dees told him that Skelton had e-mailed him to offer a new product at a special price. Dees indicated that the e-mail came from a domain belonging to Sales 360 LLC, which is one of Strategic Marketing Services, LLC's competitors in the direct-mail marketing industry.[1]

**B.**

On April 12, 2017, Strategic Marketing Services, LLC filed this action against Skelton, bringing a host of claims related to Skelton's alleged breach of his employment agreement. [R. 1 at 7–13, ¶¶ 27–69 (Complaint).] That same day, Strategic Marketing

---

[1] The Court is aware that some of the testimony elicited during the hearing on Strategic Marketing Services, LLC's motion qualifies as hearsay. Although the Sixth Circuit Court of Appeals has not passed on the question of whether hearsay evidence may be considered in the context of a preliminary injunction, *see In re DeLorean Motor Co.*, 755 F.2d 1223, 1230 n.4 (6th Cir. 1985); *Family Tr. Found. of Ky., Inc. v. Wolnitzek*, 345 F. Supp. 2d 672, 699 n.10 (E.D. Ky. 2004), the overwhelming consensus is that, in such a procedural posture, the nature of evidence as hearsay goes to the weight, not admissibility, of the evidence, *see G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*, 822 F.3d 709, 725–26 (4th Cir. 2016) (collecting cases), *vacated on other grounds*, —— U.S. ——, 137 S. Ct. 1239 (2017). *See generally* 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2949 (3d ed.), Westlaw (database updated Apr. 2017). Therefore, the Court will consider the evidence proffered and assign it whatever weight it considers appropriate.

Services, LLC sought a temporary restraining order to enforce the noncompetition, nonsolicitation, nondisclosure, and nonrecruitment clauses in that agreement. [R. 4 (Motion for Temporary Restraining Order).] After hearing argument from both sides, the Court granted that request on April 25, 2017. [R. 9 (Order of April 25, 2017).]

Two weeks later, Strategic Marketing Services, LLC moved for a preliminary injunction more or less identical to the temporary restraining order. [R. 11 (Motion for Preliminary Injunction).] During the course of a telephonic scheduling conference on that motion, Skelton expressed concern that the Court lacked subject-matter jurisdiction over this action. [R. 12 at 1 (Order of May 8, 2017).] The Court consolidated both issues and held a hearing on May 16.

## II.

### A.

Of the two kinds of original jurisdiction, *see* 28 U.S.C. §§ 1331–1332, this case concerns the one labeled "diversity." The Court exercises such jurisdiction in "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between" parties who are "citizens of different States." 28 U.S.C. § 1332(a)(1). If a party thinks such jurisdiction might be wanting, the Federal Rules of Civil Procedure afford them an avenue for relief.

Pursuant to Federal Rule of Civil Procedure 12(b)(1), the doubting party may move to dismiss an action for lack of subject-matter jurisdiction. Objections of that sort come in one of two forms: a facial challenge or a factual challenge. *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 816 (6th Cir. 2017). When assessing a factual attack, which is the kind that Skelton makes, the Court "does not presume that the plaintiff's

factual allegations are true." *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015) (citing *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1045 (6th Cir. 2015)). Instead, the Court must "weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012) (citing *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1133 (6th Cir. 1996)).

## B.

To determine whether a preliminary injunction should issue under Federal Rule of Civil Procedure 65(a), the Court weighs four factors: (1) the movant's likelihood of success on the merits; (2) irreparable harm to the movant absent injunctive relief; (3) substantial harm to others resulting from the order; and (4) impact on the broader public interest. *See Mich. State AFL-CIO v. Schuette*, 847 F.3d 800, 803 (6th Cir. 2017); *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). Each of those factors must "be balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction." *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 690 (6th Cir. 2014) (quoting *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000)), *cert. denied sub nom. Liberty Coins, LLC v. Porter*, —— U.S. ——, 135 S. Ct. 950 (2015). The party seeking the preliminary injunction bears the burden of justifying such relief. *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012) (citing *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423 (1974)).

## III.

### A.

Before addressing Strategic Marketing Services, LLC's motion, the Court must first answer a jurisdictional question. Skelton takes issue (albeit in an informal fashion) with the Court's exercise of diversity jurisdiction over this action. In the main, he argues that Strategic Marketing Services, LLC has not demonstrated that the amount in controversy exceeds $75,000. On that point, the Court disagrees.

Take, for example, Strategic Marketing Services, LLC's claim for intentional interference with a contractual relationship. Strause testified that D2MFP, Inc. paid Strategic Marketing Services, LLC more than $40,000 in exchange for conducting direct-mail marketing campaigns in 2016 alone. Yet, allegedly as a result of Skelton's interference, D2MFP, Inc. no longer does business with Strategic Marketing Services, LLC. Likewise, over the past three years or so, Strategic Marketing Services, LLC collected more than $205,000 for work done on behalf of Crain Automotive. But after Skelton and Strategic Marketing Services, LLC parted company, that relationship is not what it once was. In light of those allegations (and without reference to Strategic Marketing Services, LLC's nine additional claims), it is not difficult to imagine that the amount in controversy exceeds $75,000. Accordingly, Skelton's argument to the contrary is without merit.

### B.

Turning to the substance of Strategic Marketing Services, LLC's motion, the Court finds that the balance of the factors discussed above weighs toward issuing a preliminary injunction.

**1.**

First, Strategic Marketing Services, LLC has demonstrated a strong likelihood of success on the merits at this juncture. Take Strategic Marketing Services, LLC's breach-of-contract claim as an example. To support a breach-of-contract claim under Kentucky law, Strategic Marketing Services, LLC must establish (1) the existence of a contract, (2) breach of that contract, and (3) loss or damage following from the breach. *See Fannin v. Commercial Credit Corp.*, 249 S.W.2d 826, 827 (Ky. 1952); *Metro Louisville/Jefferson Cty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009). In the absence of factual disputes, it is well settled that "the interpretation of contracts is an issue of law" for the Court to decide. *Equitania Ins. Co. v. Slone & Garrett, P.S.C.*, 191 S.W.3d 552, 556 (Ky. 2006) (citing *Morganfield Nat'l Bank v. Damien Elder & Sons*, 836 S.W.2d 893 (Ky. 1992)).

Here, the existence of a contract is undisputed. Skelton executed an employment agreement, which prohibits him from disclosing confidential information, [R. 1-1 at 6, ¶ 12(B)], and, for a period of two years after separation, from soliciting Strategic Marketing Services, LLC's customers, [*id.* at 6–7, ¶ 14], recruiting its personnel, [*id.* at 7, ¶ 15], and competing with it, [*id.* at 7–8, ¶ 17(A)]. Though subject to many factual disputes, Strategic Marketing Services, LLC has proffered enough proof to suggest that that Skelton likely breached those clauses. As discussed earlier, the record contains evidence that Skelton has contacted clients of Strategic Marketing Services, LLC, and that at least one of those clients ceased doing business with Strategic Marketing Services, LLC after his departure. Based on the record before it, Strategic Marketing Services, LLC has a strong likelihood of succeeding on its breach-of-contract claim.

Despite Skelton's suggestion to the contrary, there is no reason to question the validity his employment agreement either. Under Kentucky law, noncompetition contracts are favored if reasonable. *Managed Health Care Assocs., Inc. v. Kethan*, 209 F.3d 923, 928 (6th Cir. 2000) (collecting cases). Generally speaking, a restraint is reasonable so long as it goes no further than necessary to afford "fair protection to the legitimate interests of the [employer]." *Stiles v. Reda*, 228 S.W.2d 455, 456 (Ky. 1950) (quoting *Johnson v. Stumbo*, 126 S.W.2d 165, 169 (Ky. 1938)). To aid in that determination, courts look to factors such as (1) the nature of the industry involved; (2) the relevant characteristics of the employer; (3) the history of the employment relationship; (4) the interests of the employer; (5) the degree of hardship imposed on the employee; and (6) the effect on the public interest. *See Hammons v. Big Sandy Claims Serv., Inc.*, 567 S.W.2d 313, 315 (Ky. Ct. App. 1978); *see also* Restatement (Second) of Contracts § 188(1) & cmts. a to d (Am. Law Inst. 1981); 6 *Williston on Contracts* § 13:4 (4th ed.), Westlaw (database updated May 2017).

In this case, nothing about Skelton's employment agreement smacks of overreaching. Strategic Marketing Services, LLC operates in a niche and competitive industry which regularly resorts to restrictive covenants of this sort. Skelton had access to proprietary and confidential information that Strategic Marketing Services, LLC undoubtedly has an interest in protecting. True enough, enforcement of the noncompetition clause will impose some hardship on Skelton, a qualified and capable salesman. But Skelton has experience in areas of the automotive industry unrelated to direct-mail marketing, such as managing automobile dealerships. [*See* R. 11-6 at 1–2 (Skelton's Resume).] In sum, the agreement appears to be reasonable and enforceable.

*See Cent. Adjustment Bureau, Inc. v. Ingram Assocs., Inc.*, 622 S.W.2d 681, 683–86 (Ky. Ct. App. 1981) (finding two-year nationwide restriction on competition, as well as nonsolicitation and nondisclosure clauses, to be reasonable). Therefore, the first factor weighs in favor of issuing a preliminary injunction.

## 2.

Second, it is probable that Strategic Marketing Services, LLC will suffer irreparable harm absent an injunction. Equitable relief is particularly appropriate to enforce contracts of this sort. *See Louisville Cycle & Supply Co. v. Baach*, 535 S.W.2d 230, 232 (Ky. 1976). Strategic Marketing Services, LLC's continuing damages cannot be quantified easily. The types of harm possible include use of its proprietary information, loss of business, and the erosion of goodwill with its customers. *See Gardner Denver Drum LLC v. Goodier*, No. Civ.A. 3:06-CV-4-H, 2006 WL 1005161, at *10 (W.D. Ky. Apr. 14, 2006); *accord Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992) (applying Ohio law). Skelton admitted that but-for the Court's prior restraining order, he would likely pursue opportunities in the direct-mail marketing industry. Accordingly, the second factor tilts in Strategic Marketing Services, LLC's direction.

## 3.

Third, the Court does not—and cannot—discount the harm to Skelton. It seems fair to say that issuing a preliminary injunction will prohibit Skelton from pursuing a desirable line of work for a time. What is more, Strategic Marketing Services, LLC made the decision to part ways with Skelton—not *vice versa*. But Skelton voluntarily entered into the employment agreement and, so far as the Court sees, enjoyed substantial benefits

as a result.  The risk of harm to Skelton, therefore, counsels against injunctive relief, but does not appear to be too great of a hardship.

**4.**

Fourth, a preliminary injunction will promote the broader public interest—or, at least, will not harm it.  Kentucky law favors the enforcement of noncompetition clauses "unless very serious inequities would result." *Lareau v. O'Nan*, 355 S.W.2d 679, 681 (Ky. 1962) (citing *Bradford v. Billington*, 299 S.W.2d 601 (Ky. 1957)).  "[T]he public interest is always served in the enforcement of valid restrictive covenants contained in lawful contracts." *FirstEnergy Sols. Corp. v. Flerick*, 521 F. App'x 521, 529 (6th Cir. 2013) (quoting *Nat'l Interstate Ins. Co. v. Perro*, 934 F. Supp. 883, 891 (N.D. Ohio 1996)).  Consequently, the final factor goes to Strategic Marketing Services, LLC.

**5.**

Having considered those factors, and on the record before it, the Court holds that a preliminary injunction should issue.

**IV.**

**IT IS HEREBY ORDERED** that Strategic Marketing Services, LLC's Motion for a Preliminary Injunction, [R. 11], is **GRANTED**.

1.     Daniel Skelton is **ENJOINED** and **RESTRAINED**, directly or indirectly and whether alone or in concert with others (including any officer, agent, representative, and/or employee of Daniel Skelton's present company), within the boundaries of the United States of America, from:

a.      Selling or servicing, or participating in the sale or service, of any direct-mail marketing; lead generation through the world wide web; brokering and reselling leads and lead services; licensing interactive voice response; lead management systems; customer relationship management systems; and other product line similar to those offered by or through Strategic Marketing Services, LLC, as of November 11, 2016; and

b.      Disclosing or making any use of Strategic Marketing Services, LLC's confidential information; and

c.      Soliciting, inducing, or attempting to solicit or induce any customer of Strategic Marketing Services, LLC to terminate his, her, or its relationship with Strategic Marketing Services, LLC for any purpose, including the purpose of associating with or becoming a client; and

d.      Soliciting, inducing, or attempting to solicit or induce any person known to Daniel Skelton to be an employee of Strategic Marketing Services, LLC to terminate his or her employment or other relationship with Strategic Marketing Services, LLC.

2.      The security posted on May 1, 2017 in the amount of five thousand dollars ($5,000.00) **SHALL** remain in force.

3.      This Order **SHALL** remain in full force and effect until such time as the Court orders otherwise.

**IT IS FURTHER ORDERED** that a Telephonic Status Conference is **SET** for **May 30, 2017 at 11:30 a.m. EST**.  Counsel and any party wishing to participate must

call 1 (877) 848-7030, then give the Access Code 2523122 and #, and, when prompted,

press # again to join the call.

**IT IS SO ORDERED.**

Date:

cc:      Counsel of Record

       Daniel Skelton
       279 Leese Dr.
       St. Johns, Florida 32259
       (904) 386-2663

       Daniel Skelton
       12700 Bartram Park Blvd 2111
       Jacksonville, Florida 32258
       (904) 386-2663

       daniel.skelton2005@gmail.com